1
2
3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JULENE E.S.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 22-CV-5158 TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

      Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge.  Dkt. 3.  For the reasons set forth below, the Court concludes that the decision to deny benefits should be reversed and that this matter should be remanded to the Commissioner for further administrative proceedings.

I.      <u>BACKGROUND</u>

      On August 4, 2017, Plaintiff filed an application for Title II disability benefits, alleging an April 4, 2017 onset date.  *See* Dkt. 6, Administrative Record ("AR") 300-01. After a February 5, 2019 hearing, an administrative law judge ("ALJ") issued a decision on July 2, 2019, finding that Plaintiff was not disabled.  AR 150-62.  Plaintiff requested

1   review of the ALJ's decision, and, on April 22, 2020, the Appeals Council granted

2   review, vacated the ALJ's hearing decision, and remanded the case to the ALJ.  AR

3   169-71.

4          On remand, the ALJ held a new hearing on February 9, 2021, and subsequently

5   denied Plaintiff's application on March 31, 2021.  AR 13-34.  The ALJ determined that

6   Plaintiff had the following severe impairments:  mild degenerative disease suggestive of

7   early sacroiliitis; fibromyalgia; right carpal tunnel syndrome; obesity; panic disorder;

8   psychotic disorder; major depressive disorder; posttraumatic stress disorder ("PTSD");

9   and obesity.  AR 16.  The ALJ then determined that Plaintiff had a residual functional

10  capacity ("RFC") for light work with several limitations.  AR 19-20.  Relying on the

11  testimony of a vocational expert ("VE"), the ALJ ultimately concluded that Plaintiff was

12  not disabled at step five of the sequential analysis because an individual with Plaintiff's

13  RFC could perform the jobs of marker, storage facility rental clerk, and garment sorter.

14  AR 33.

15         After the Appeals Council denied review, Plaintiff sought review in this Court.  AR

16  2-7; Dkt. 1.

17                          II.    ISSUES FOR REVIEW

18         Plaintiff raises the following issues on appeal:

19         1.  Did the ALJ err in evaluating the medical opinion of psychologist, Dr. Louise

20             Welter?

21         2.  Did the ALJ err in failing to properly develop the record regarding Plaintiff's

22             physical impairments?

23

24

25

III.    <u>DISCUSSION</u>

A.    Standard of Review

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This requires "more than a mere scintilla," of evidence.  *Id.*

The Court must consider the administrative record as a whole.  *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014).  The Court also must weigh both the evidence that supports and the evidence that does not support the ALJ's conclusion.  *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely.  *Id.*  Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review.  *Id.*

B.    Medical Opinions Regarding Plaintiff's Mental Impairments

The administrative record contains treatment records and multiple opinions from Plaintiff's treating psychologist, Dr. Louise Welter, dated November 2015 through January 2021.  AR 541-76, 603-07, 957-64.  State agency non-examining consulting psychologists, Drs. Rosalia Pereyra and Jan Lewis, also submitted medical opinions in 2017 and 2018, respectively, along with state agency examining consulting psychologist, Dr. David Jarmon. [1]   AR 127-29 (Dr. Pereyra's December 2017 opinion

---

[1] The Court acknowledges that what were previously considered "opinions" from state agency medical and psychological consultants have now been relabeled as "prior administrative medical findings."  20 C.F.R. § 416.913(a)(5); see also Revisions to

1  on initial review); 142-43 (Dr. Lewis' April 2018 decision on reconsideration); 492-98

2  (Dr. Jarmon's December 2017 opinion).

3        In addition to the above medical opinions, the record also includes treatment

4  notes and observations from Plaintiff's treating psychiatric nurse practitioner ("NP"),

5  Danica Oparnica, who managed Plaintiff's psychiatric medications from July 2016

6  through January 2018.  AR 452-87, 499-510, 511-40 (NP Oparnica's treatment

7  records).  In February 2018, after Plaintiff moved from Arizona to Washington, she

8  subsequently received her psychiatric medication management from Mindful Therapy

9  Group-Seattle ("Mindful Therapy").  AR 589-602, 644-90 (Mindful Therapy's treatment

10  records from 2018-2020).

11       In assessing Plaintiff's functional limitations, the ALJ rejected as unpersuasive

12  the opinions from treating psychologist, Dr. Welter, and examining psychologist, Dr.

13  Jarmon, in which Drs. Welter and Jarmon opined to severe functional limitations.  AR

14  29-31.  The ALJ instead found persuasive the opinions from non-examining state

15  agency psychologists, Drs. Pereyra and Lewis, who opined to, at most, moderate

16  functional limitations and found that Plaintiff could "cope with normal changes in a non-

17  demanding work environment."  AR 127-29, 142-43.

18

19

20  Rules, 2016 WL 4702272, 81 Fed. Reg. 62560-01, at 62564 (Sept. 9, 2016).  However,
    because "prior administrative medical findings" continue to be treated the same as other
21  medical opinions, for clarity, the Court continues to refer to the "prior administrative
    medical findings" as "opinions" throughout this Order.  *See* 20 C.F.R. § 404.1520c
22  (considering "prior administrative medical findings" in the same manner and using the
    same factors as "medical opinions"); *see also* 81 Fed. Reg. 62560-01, at 62564 ("We
23  would consider and articulate our consideration of prior administrative medical findings
    using the same factors we use to consider medical opinions from medical sources.").
24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

1    Plaintiff contends that the ALJ's rejection of Dr. Welter's opinions was not

2 supported by substantial evidence, and, for the reasons that follow, the Court agrees.

3    1.    Legal Standards

4    For claims filed before March 27, 2017, "[t]he medical opinion of a claimant's

5 treating physician is given 'controlling weight' so long as it 'is well-supported by

6 medically acceptable clinical and laboratory diagnostic techniques and is not

7 inconsistent with the other substantial evidence in [the claimant's] case record.'"

8 *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. §

9 404.1527(c)(2)).  However, the regulations regarding evaluation of medical evidence

10 have been amended and several of the prior Social Security Rulings, including Social

11 Security Ruling 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source

12 Medical Opinions"), have been rescinded for claims filed after March 27, 2017, as is the

13 case here.  *See* Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68

14 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a).

15    The 2017 regulations provide that the Commissioner "will no longer give any

16 specific evidentiary weight to medical opinions; this includes giving controlling weight to

17 any medical opinion."  20 C.F.R. § 416.920c(a).  The 2017 Rule Revisions "displace [the

18 Ninth Circuit's] longstanding case law" requiring an ALJ to articulate "specific and

19 legitimate reasons" for rejecting a treating physician's opinion where the opinion is

20 contradicted by other medical opinions.  *Woods v. Kijakazi*, 32 F.4th 785, 787, 791 (9th

21 Cir. 2022).

22    Under the new regulations, the Commissioner instead must consider all medical

23 opinions and "evaluate their persuasiveness" based on the following factors: 1)

24

25

1   supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5)

2   "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).  The two "most

3   important factors for determining the persuasiveness of medical opinions are

4   consistency and supportability," which are the "same factors" that "form[ed] the

5   foundation of the [prior] treating source rule."  Revisions to Rules, 82 Fed. Reg. 5844-01

6   at 5853; *see also Woods*, 32 F.4th at 791-92.  The ALJ is required to explicitly address

7   supportability and consistency in their decision.  20 C.F.R. §§ 404.1520c(b)(2),

8   416.920c(b)(2).  As with all other determinations made by the ALJ, the ALJ's

9   persuasiveness explanation must be supported by substantial evidence.  *See Woods*,

10  32 F.4th at 787.

11      With respect to "supportability," the new regulations provide that "[t]he more

12  relevant the objective medical evidence and supporting explanations presented by a

13  medical source are to support his or her medical opinion(s) or prior administrative

14  medical finding(s), the more persuasive the medical opinions or prior administrative

15  medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Regarding

16  "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or

17  prior administrative medical finding(s) is with the evidence from other medical sources

18  and nonmedical sources in the claim, the more persuasive the medical opinion(s) or

19  prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2),

20  416.920c(c)(2).

21      Typically, the ALJ "may, but [is] not required to," explain how they considered the

22  remaining three factors listed in the regulations.  *Id*.  However, where two or more

23  distinct medical opinions are equally supported and consistent, the ALJ should articulate

24

25

1 | how they considered factors other than supportability and consistency, including the

2 | treatment relationship, the extent of specialization, and any other relevant factors.  *See*

3 | 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *see also Woods*, 32 F.4th at 792

4 | (discussing 20 C.F.R. § 404.1520c(b)(3)) ("In that case, the ALJ 'will articulate how [the

5 | agency] considered the other most persuasive factors.'").

6 |    2.  Psychologist Dr. Welter's Opinion

7 |    Dr. Welter treated Plaintiff on a regular basis for nearly six years from 2015-2021,

8 | and, during that time, opined on several occasions regarding Plaintiff's functional

9 | capacity.  AR 541-76.  Dr. Welter's opinions were based on her weekly psychotherapy

10 | sessions with Plaintiff, tests she conducted during Plaintiff's treatment, and, more

11 | generally, on her observations of Plaintiff over the years.

12 |    Dr. Welter's opinions themselves reflect the fluctuating nature of the symptoms of

13 | Plaintiff's mental impairments.  AR 570-74, 603-07, 959-64.  During these fluctuations,

14 | Plaintiff would attempt to return to work, but then her symptoms would worsen, and she

15 | would subsequently find herself unable to work.  AR 570-74, 603-07, 959-64; *see also*

16 | AR at 452, 466, 486, 497, 596.  Plaintiff stopped working entirely in 2017 when her

17 | symptoms increased, and her mental condition deteriorated significantly.  AR 49, 566,

18 | 596.

19 |    In January 2021, Dr. Welter offered her most recent opinion just weeks prior to

20 | Plaintiff's February 2021 hearing.  Dr. Welter opined:

21 |     [Plaintiff's] functioning remains severely impaired having further

22 |     deteriorated. . . .  This impairment and deterioration have occurred during a
period in which she has not been working.  That she has not been working

23 |     and continues to (a) experience severe symptoms; and, (b) evidence
deterioration in functioning and an increase in symptom frequency, duration,

24 |     and intensity provides clear evidence that her symptoms are not situational,

25 |

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 7

[but] that the psychological disorders with which [Plaintiff] is suffering are chronic, universal, and intractable.

AR 959.  Dr. Welter further noted in a 2021 case summary that due to her PTSD and panic disorder, Plaintiff "rarely" left her home, and when she does leave, she is accompanied by her husband or roommates.  AR 960.  On "severely depressed days," Plaintiff is unable to leave her bed or perform any activities of daily living, including caring for her daughter.  AR 960.  Plaintiff typically provides minimal care for her daughter, and her husband and roommates provide the majority of care.  AR 960. Plaintiff cannot drive or use public transportation.  AR 960.

Dr. Welter specifically opined that Plaintiff's ability to maintain attention and concentration, regular attendance, work with others, interact with the public, make simple work-related decisions, and to complete a normal workday were either seriously limited or precluded.  AR 962-63.  Moreover, given the psychotic episodes that Plaintiff experiences five to seven times per week, Dr. Welter noted that Plaintiff would miss twenty to twenty-eight days of work per month.  AR 963.

The ALJ acknowledged Dr. Welter's "several opinion statements" from over the years, but rejected them as unpersuasive, concluding that they were poorly supported, internally inconsistent, and inconsistent with the medical record.[2]  AR 30-31.

a.    Supportability

---

[2] Where a single medical source provides multiple opinions or findings, like those of Dr. Welter, the regulations provide that an ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5)," which the ALJ did here.  *See* AR 31; 20 C.F.R. § 404.1520c(b)(1) (emphasis added) (explaining that "voluminous case records" necessitate source-level articulation).

1    The ALJ found that Dr. Welter's opinions were unsupportable for four reasons,

2  including: (1) the absence of "contemporaneous observations and findings" and

3  "individual treatment records;" (2) a finding that Plaintiff was suffering from "situational

4  stressors;" (3) the opinions were based on Plaintiff's subjective reporting; and (4) Dr.

5  Welter had limited opportunities to directly observe Plaintiff.  AR 31.

6    The ALJ's supportability findings were not based on substantial evidence.  First,

7  on several occasions, Dr. Welter in fact provided contemporaneous observations with

8  the opinions she offered.  *See, e.g.,* AR 543, 555, 603, 961.  The record likewise

9  provides Dr. Welter's numerous individual treatment records in the form of "case

10 summary" notes, as acknowledged by the ALJ, in addition to Dr. Welter's provider

11 statements.  *See, e.g.,* AR 541-51, 553-63, 565-68.

12   Moreover, given the ALJ's subsequent reliance on the opinions of state agency

13 psychological consultants, Drs. Pereyra and Lewis, to the extent that Dr. Welter failed to

14 offer contemporaneous or individual findings in support of any of her opinions, this

15 reason is unconvincing.  AR 29 (citing AR 129, 143).  In contrast to Dr. Welter, Drs.

16 Pereyra and Lewis did not meet or examine Plaintiff, and thus offered *no*

17 contemporaneous findings or observations.  Nevertheless, the ALJ adopted their

18 opinions without any mention of the absence of such findings or observations.  AR 29.

19   Second, the ALJ discounted the supportability of Dr. Welter's opinion because

20 "[Plaintiff] was in the midst of numerous situational stressors."  AR 31.  It is the

21 impairment that must prevent performance of substantial gainful activity, not situational

22 factors, such as job losses, economic issues, or homelessness; and any impairment

23 that does not last continuously for twelve months does not satisfy the requirement.  *See*

24

25

1    42 U.S.C. § 423(d)(1)(A) ("'[D]isability' means inability to engage in substantial gainful

2    activity by reason of any medically determinable physical or mental impairment which

3    can be expected to result in death or which has lasted or can be expected to last for a

4    continuous period of not less than 12 months; or . . . .").

5         Here, while the record indicates that Plaintiff endured exacerbating personal

6    stressors during the period at issue, the record also indicates Plaintiff had long been

7    struggling with psychosis, panic attacks, anxiety, depression, and PTSD.  *See, e.g.,* AR

8    452, 466, 480, 487, 590-92, 600, 650, 827, 834; *see also* AR 570-71, 958 (Dr. Welter

9    observed in 2021, "[g]iven that [Plaintiff] has not been working for almost three years, it

10   continues to be clear that her panic attacks are *not* triggered by situational factors.").

11        Nor were the remaining two supportability reasons supported by substantial

12   evidence.  As the Ninth Circuit has expressly recognized, it is error for the ALJ to reject

13   a medical opinion based on the claimant's subjective self-reporting; the Ninth Circuit's

14   reasoning applies in this case, especially where Dr. Welter relied on objective

15   procedures and tests as well.  *See* AR 544, 547, 555-56, 562; *Buck v. Berryhill*, 869

16   F.3d 1040, 1049 (9th Cir. 2017) (noting that psychiatric "[d]iagnoses will always depend

17   in part on the patient's self-report").

18        Finally, it was error for the ALJ to suggest that Dr. Welter's telehealth visits

19   undermined the supportability of her opinions – especially to the extent that those

20   telehealth visits occurred during the COVID-19 pandemic.  Dr. Welter treated Plaintiff for

21   several years in person**,** prior to Plaintiff's move from Arizona to Washington in 2018.

22   *See* AR 55-56, 570-71, 541, 546, 549, 554, 558.  Thus, there was an established in-

23   person relationship between plaintiff and Dr. Welter at the time they began the

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

1   telehealth visits.  Moreover, as noted, the state agency psychological consultants, upon

2   whose opinion the ALJ relied on and adopted, never directly observed, met, or

3   interviewed Plaintiff.  AR 127-29, 142-43.

4       For these reasons, the ALJ's determination that Dr. Welter's opinions were not

5   supportable was not supported by substantial evidence.

6           b.      Consistency

7       As for their consistency, the ALJ found that Dr. Welter's opinions were both --

8   internally inconsistent, and inconsistent with the medical evidence in the record.  AR 31.

9   Regarding the record evidence, the ALJ specifically found the opinions inconsistent

10  with: (1) Plaintiff's "largely benign objective mental status findings;" (2) Plaintiff's

11  improvement and "general stability with medication;" and (3) Plaintiff's own testimony

12  regarding her travel and ability to care for her child with special needs.  AR 31.

13      The ALJ's determination regarding lack of consistency is also unsupported by

14  substantial evidence.

15           i.      Internal Consistency

16      The ALJ found that Dr. Welter's opinions regarding the limitations posed by

17  Plaintiff's severe mental impairments were inconsistent with Dr. Welter's statement that

18  Plaintiff was "an ideal patient in that she always works hard in her sessions and

19  complies with all treatment recommendations."  AR 31 (citing AR 602, January 2020

20  Update to Case Summary, and AR 959, January 2021 Update to Case Summary).  The

21  ALJ thus implied that Plaintiff's relationship with her psychologist and the work she did

22  in psychotherapy could be analogized to a work setting, stating that Dr. Welter's

23

24

25

1    observation "indicat[ed] that [Plaintiff] can persist and follow through with tasks, follow

2    instructions, and adapt to any changes in those instructions."  AR 31.

3          However, there is no internal inconsistency because Plaintiff's performance in

4    psychotherapy is not equivalent to her performance at a job.  As the Ninth Circuit has

5    recognized, "many home activities are not easily transferable to what may be the more

6    grueling environment of the workplace, where it might be impossible to periodically rest

7    or take medication."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The same is

8    true of a psychologist's office.  Dr. Welter's recognition that Plaintiff was an "ideal

9    patient" thus cannot be interpreted to undermine the functional limitations to which Dr.

10   Welter opined.

11               ii.     External Consistency

12                      *Objective Mental Status Findings*

13         In support of the consistency finding, the ALJ also found Dr. Welter's opinions

14   "out of proportion to and inconsistent" with the record, pointing to "largely benign

15   objective mental status findings."  AR 31 (citing AR 26 and AR 670).  It is true that

16   routine observations at medical visits for both Plaintiff's physical and mental

17   impairments sometimes reflected that Plaintiff presented as "pleasant and cooperative"

18   and with above average intelligence.  AR 497, 670.  However, these routine observation

19   notes did not undermine the severity and persistence of symptoms and limitations from

20   Plaintiff's long-term chronic mental health conditions; nor did they diminish the fact that

21   in 2017, Plaintiff's mental health significantly deteriorated, and the symptoms became

22   so pronounced they precluded her from working.  AR 486, 590-91, 596, 650.

23

24

25

1    Indeed, from late 2015 until July 2017, Plaintiff's symptoms and functional

2  capacity fluctuated, and she was on short-term disability three separate times and for

3  nearly eleven months during that time due to her mental impairments -- until she

4  stopped working entirely after her short-term disability ended later in 2017.  *See* AR

5  497-98, 595-96.

6    Thus, the particular "cherry-picked" routine observations cited by the ALJ do not

7  undermine the consistency of Dr. Welter's opinion with the overall record.   *See* AR 452,

8  466, 480, 487, 590-92, 600, 650, 827, 834; *see also Ghanim v. Colvin*, 763 F.3d 1154,

9  1162 (9th Cir. 2014) (ALJ should take "holistic review of the record" in evaluating

10  medical opinions); *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (improper for

11  ALJ to "cherry-pick" absence of certain symptoms from medical evidence as opposed to

12  undertaking a "broader development" of the evidence in its entirety).

13    *Plaintiff's Improvement with Medication*

14    The ALJ mischaracterizes the record regarding the impact of psychiatric

15  medications on Plaintiff's mental health impairments and symptoms.  There is no

16  dispute that, on occasion, Plaintiff experienced improvement on certain medications.

17  *See* AR 468, 31.  However, any improvement was often short-lived, as demonstrated by

18  Plaintiff's need to cycle on and off multiple psychiatric medications over the years.  *See,*

19  *e.g.,* AR 590 (Mindful Therapy clinician notes in 2019 that Plaintiff had tried Lexapro,

20  Zoloft, Effexor, Anfranil, Pristiq, Saphris, Buspar, and Venaflaxine, often with mixed

21  results), 691 (noting that Plaintiff's medications were not managing her mental illness

22  very well), 452-87, 499-510; *see also Garrison*, 759 F.3d at 1017 ("Cycles of

23  improvement and debilitating symptoms are a common occurrence, and in such

24

25

1    circumstances, it is error for an ALJ to pick out a few isolated instances of improvement

2    over a period of months or years and to treat them as a basis for concluding a claimant

3    is capable of working.").

4         Therefore, this reason fails as well.

5                         *Plaintiff's Travel and Care for Child*

6         Plaintiff has a daughter with special needs who was elementary school-aged at

7    the time of the 2019 and 2021 hearings.  *See* AR 94.  Plaintiff's mother lives in

8    Michigan, and her father lives in Arizona.  AR 94-98.  Due to her mental impairments,

9    Plaintiff has encountered difficulty caring for her daughter over the years, and, at one

10   point, her young daughter lived with Plaintiff's mother for a year.  AR 596, 497-98.  At

11   the time of the 2021 hearing, Plaintiff lived with her husband and four other roommates,

12   who all helped with her daughter's care.  AR 958.

13        Plaintiff testified that, during her daughter's school breaks, she accompanies her

14   daughter on flights to visit her daughter's out-of-state grandparents.  AR 93-95.  The

15   grandparents pay for the airline tickets.  AR 97.  Plaintiff noted that she accompanies

16   her daughter because, given her daughter's age and special needs, she is unable to

17   travel alone.  AR 94.  Plaintiff's daughter often spends the entire spring or summer

18   break with a grandparent, and, on occasion, Plaintiff will fly home alone after dropping

19   off her daughter.  AR 96-97.

20        The ALJ found that Dr. Welter's opinions regarding Plaintiff's RFC were

21   inconsistent with Plaintiff's travel and care for her child, noting that it was "inconceivable

22   that a person with the limitations and chronic severe symptoms indicated by Dr. Welter

23

24

25

1   would be able to complete these trips without the continuous aid of another adult."  AR

2   31.

3        A claimant, however, need not be "utterly incapacitated" to be eligible for

4   disability benefits.  *Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996).

5   Moreover, "disability claimants should not be penalized for attempting to lead normal

6   lives in the face of their limitations."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

7   1998).  Here, the ALJ ignored that the air travel Plaintiff undertook to take her child to

8   visit grandparents constituted a stark exception to Plaintiff's daily routine – in which she

9   typically remained in her bedroom, leaving only to use the restroom or to attend doctor's

10  appointments.  AR 86, 89, 596, 674.  Additionally, the ALJ's reasoning also ignores the

11  preparations and accommodations Plaintiff required in order to make such trips.

12  Plaintiff testified that she requires non-stop flights and additional medication due to her

13  panic and anxiety, in addition to wheelchair assistance.  AR 93-96, 106-07.

14       Accordingly, this reason also fails.

15       In sum, the ALJ's determination that Dr. Welter's opinions were not supportable

16  or consistent was not supported by substantial evidence.

17       The error cannot be characterized as harmless, and the ALJ is therefore required

18  to reweigh the medical opinions from Dr. Welter on remand.  Moreover, because Dr.

19  Welter's opinions were at least as supportable and consistent with the longitudinal

20  record as those from the state agency consulting physicians, on remand, the ALJ is also

21  required to consider the remaining three factors – treatment relationship, specialization,

22  and any "other factors" -- with respect to all the medical opinions concerning Plaintiff's

23  mental impairments.  See AR 452, 466, 480, 487, 590-92, 600, 650, 827, 834; *see also*

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 15

1  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (ALJ should articulate how they

2  considered factors other than supportability and consistency, including the treatment

3  relationship, when they find two or more medical opinions about the same issue equally

4  well-supported and consistent with the record); *accord Woods*, 32 F.4th at 792 (citing 20

5  C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (noting that when "'two or more medical

6  opinions . . . about the same issue are . . . equally well supported . . . and consistent

7  with the record. . . but are not exactly the same,' . . . the ALJ 'will articulate how [the

8  agency] considered the other most persuasive factors'").

9  C.    ALJ's Record Development Regarding Plaintiff's Physical Impairments

10        Plaintiff was not suffering from physical impairments at the time she filed her

11  2017 DIB application -- or even when the ALJ issued the first July 2019 decision.

12  Instead, Plaintiff's physical impairments developed in late 2019, and therefore were at

13  issue for the first time in the proceedings following the Appeals Council's reversal and

14  remand of the case for a new hearing and decision.  AR 21-22.

15        At the time of the ALJ's later decision in March 2021, the record contained results

16  from an October 2019 magnetic resonance imaging test ("MRI"); and the record also

17  included 2019-2021 treatment records from Plaintiff's primary care physician, her

18  rheumatologist, and her spine, sport, and musculoskeletal physicians, for her

19  fibromyalgia, sacroiliitis, and carpal tunnel syndrome – all physical impairments that the

20  ALJ concluded constituted severe impairments.  AR 16, 691-913, 924-56, 965-70.

21  However, the only medical opinions regarding Plaintiff's physical impairments were from

22

23

24

25

2017 and 2018, predating the onset of the very physical impairments the ALJ found to be severe in her March 2021 decision.[3]  *Id.*

In conjunction with her March 2021 decision, the ALJ sought no additional medical opinions regarding Plaintiff's recent physical impairments; nor did she order a consultative physical examination.  Instead, the ALJ independently interpreted Plaintiff's 2019-2021 medical evidence in assessing Plaintiff's physical functional limitations.  AR 21-24.  Plaintiff argues this was error.

Although a plaintiff bears the overall burden of proving disability, the ALJ in a social security case bears an independent and "'special duty to fully and fairly develop the record and to assure the claimant's interests are considered.'"  *Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  Importantly, this duty extends not only to unrepresented claimants, but also to cases where the claimant has representation.  See *id*.; *see also Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003).  This duty is heightened where a claimant, like Plaintiff, is mentally ill and may be unable to effectively protect her own interests.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The existence of ambiguous evidence triggers the ALJ's duty to "conduct an appropriate inquiry."  *Id.* (quoting *Smolen*, 80 F.3d at 1288).  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting

---

[3] The medical opinions regarding Plaintiff's physical limitations included a November 2017 opinion from consultative physical examiner, Dr. Paul Bendheim, a December 2017 opinion from state agency non-examining consulting physician, Dr. John Kurtin on initial review, and an April 2018 opinion from state agency non-examining consulting physician, Dr. Howard Platter.  *See* AR 28, 123, 138, 488-91.

questions to the claimant's physicians, continuing the hearing, or keeping the record

open after the hearing to allow supplementation of the record."  *Id.* (citations omitted).

The regulations additionally allow the ALJ to order further consultative

examinations to "resolve an inconsistency in the evidence or when the evidence as a

whole is insufficient to support a determination or decision."  20 C.F.R. § 404.1519a.

Further development of the record is required when the additional evidence needed is

not contained in the records of the claimant's medical sources, and when highly

technical or specialized medical evidence not available from the claimant's medical

sources is needed.   *See id.*  Once the duty to further develop the record is triggered,

failure to do so constitutes reversible error.   *See Tonapetyan*, 242 F.3d at 1150–51.

Here, Plaintiff's 2019-2021 medical evidence concerning physical conditions

triggered the ALJ's duty to develop the record to ascertain the extent of her physical

impairments and their limitations, and the ALJ's failure to do so was error.  The ALJ

compounded the record development error by then independently assessing how

Plaintiff's mental and physical impairments impacted her ability to work.  *See Matthew*

*N. C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-05112-DWC, 2019 WL 4439890, at *4 (W.D.

Wash. Sept. 17, 2019) (quoting *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal.

2006)) (noting "the ALJ's RFC determination or finding must be supported by medical

evidence, particularly the opinion of a treating or an examining physician").  "[A]s a lay

person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'"

*Burget v. Comm'r of Soc. Sec.*, No. C17-1836 BAT, 2018 WL 4204057, at *3 (W.D.

Wash. Sept. 4, 2018) (quoting *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal.

2008)).

1    For these reasons, remand is required for the ALJ to further develop the record

2  regarding Plaintiff's physical impairments prior to adjudicating Plaintiff's claims.  The

3  Court recognizes that the ALJ may discharge this duty in several ways and defers to the

4  ALJ to determine the appropriate method.  *See Tonapetyan*, 242 F.3d at 1150.

5  D.    Remedy

6    "'The decision whether to remand a case for additional evidence, or simply to

7  award benefits[,] is within the discretion of the court.'"  *Trevizo*, 871 F.3d at 682 (quoting

8  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).  If an ALJ makes an error and

9  the record is uncertain and ambiguous, a court should remand to the agency for further

10  proceedings.  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).  Likewise, if a court

11  concludes that additional proceedings can remedy the ALJ's errors, it should remand

12  the case for further consideration.  *Revels*, 874 F.3d at 668.

13    The Ninth Circuit has developed a three-step analysis for determining when to

14  remand for a direct award of benefits.  Such remand is generally proper only where

15        (1) the record has been fully developed and further administrative
16        proceedings would serve no useful purpose; (2) the ALJ has failed to
        provide legally sufficient reasons for rejecting evidence, whether claimant
        testimony or medical opinion; and (3) if the improperly discredited
17        evidence were credited as true, the ALJ would be required to find the
        claimant disabled on remand.

18  *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison*, 759 F.3d at 1020).  The Ninth Circuit

19  emphasized in *Leon* that even when each element is satisfied, a court still has

20  discretion to remand for further proceedings.  80 F.3d at 1045.

21    It is not clear in this case whether the ALJ would be required to find Plaintiff

22  disabled if all of the evidence were properly evaluated.  Therefore, remand is

23  appropriate.  As discussed above, on remand, the ALJ must: (1) reconsider the weight

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 19

1 | accorded the medical opinion from Dr. Welter based on all five factors set forth in 20

2 | C.F.R. § 404.1520c(c)(1)-(5); and (2) develop the record further regarding the functional

3 | limitations associated with Plaintiff's physical impairments.

4 | IV.    <u>CONCLUSION</u>

5 | Based on the foregoing discussion, the Court finds the ALJ erred when she

6 | determined Plaintiff to be not disabled.  The Commissioner's decision to deny benefits

7 | therefore is REVERSED, and this matter is REMANDED for further administrative

8 | proceedings consistent with this order.

9 | Dated this 29th day of November, 2022.

10

11

12 | *Theresa L. Fricke*

13 | Theresa L. Fricke
United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25